## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

|  |  |
|---|---|
| IN RE: | ) |
| | ) |
| W. S. LEE & SONS, INC. | ) Bktcy. 06-*40178* BM ✓ |
| | ) |
| | ) Chapter 11 |
| Debtor | ) |
| | ) |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

|  |  |
|---|---|
| IN RE: | ) |
| | ) |
| LEE SYSTEMS SOLUTIONS, LLC | ) Bktcy. 06-      BM |
| | ) |
| | ) Chapter 11 |
| Debtor | ) |
| | ) |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

|  |  |
|---|---|
| | ) |
| W. S. LEE & SONS, INC., and LEE | ) |
| SYSTEMS SOLUTIONS, LLC | ) |
| | ) |
| Debtors-In-Possession | ) |
| | ) |
| Movants | ) |
| | ) |
| v. | ) Related To Doc. # 3 and 35 |
| | ) |
| | ) |
| No Respondents | ) |
| | ) Hearing Date: April 20, |
| | ) 2006 |
| Respondent | ) Time of Hearing:1:00 p.m. |
| | ) |
| | ) |
| | ) |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

*Consent*

## ORDER OF COURT

**AND NOW, to wit,** this 24 day of *April*, 2006, the Court
having considered the Motion To Retain Phoenix Management
Services, Inc., as well as the Retention Letter of Phoenix
Management Services, Inc. dated March 14, 2006, as amended April
20, 2006, and the withdrawal of all objections to said retention
by the parties in interest at the time of hearing thereon as the
result of the amendments to the terms of retention letter, **IT IS**

1

**HEREBY ORDERED, ADJUDGED, DETERMINED, FOUND AND DECREED** that the retention of Phoenix Management Services, Inc. to be the Financial Advisor to the Debtor is authorized and approved.

No payment of any professional fees or expenses of Phoenix Management Services, Inc. shall be paid except as and to the extent such payments may hereafter be authorized by this Court after notice and hearing on an Application For Approval And Authorization To Pay Professional Compensation And Reimburse Expenses Of Debtor's Financial Advisor that was duly filed by the Applicant and after hearing is scheduled and conducted thereon by this Court.

BY THE COURT:

4-24-06

BERNARD MARKOWITZ
UNITED STATES BANKRUPTCY JUDGE

FILED

APR 2 4 2006

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

4/27



# PHOENIX MANAGEMENT SERVICES, INC.

110 Chadds Ford Commons
Chadds Ford, PA 19317
610-358-4700
FAX 610-358-9377
www.phoenixmanagement.com

# 122

## PHOENIX
### MANAGEMENT SERVICES

Michael E. Jacoby
Managing Director and Shareholder

March 14, 2006, As Amended April 20, 2006

Mr. Robert S. Donaldson
Executive Vice President and Chief Executive Officer
W.S. Lee & Sons, Inc. and Subsidiaries
P.O. Box 1631
Altoona, PA  16603

Dear Robert:

This letter agreement (the "Agreement") sets forth the understanding between Phoenix Management Services, Inc. ("Phoenix") and W.S. Lee & Sons, Inc. and its wholly-owned subsidiary, Lee Systems Solutions, LLC (hereinafter collectively referred to as "WS Lee" or the "Company") for the engagement of Phoenix to serve as financial advisor to the Company as debtor-in-possession in the Company's Chapter 11 proceeding.  As you know, pursuant to our engagement letter dated January 21, 2006, Phoenix has been assisting the Company to address certain business issues.  The Company now desires to specify the scope and type of services to be performed during the Company's Chapter 11 cases, and desires to retain Phoenix to do so.  Upon execution of this Agreement, our engagement going forward with the Company shall be governed by the terms and conditions of this Agreement.  The engagement of Phoenix shall be under the approval of you, in accord with the authority accorded you by the Board of Directors of the Company in its Resolution(s) dated March 10, 2006.

## Scope of Services
In connection with this engagement, Phoenix shall provide financial advisory services to the Company as more fully described below.  We have been advised that Omega Bank has provided a carve out of $100,000 for the payment of allowed fees and expenses for the services of the Debtor's financial advisor..  For all purposes including, *inter alia,* of corporate governance, under state law or otherwise, neither Phoenix nor any of its employees shall be deemed to be officers or directors of the Company.  Working collaboratively with the senior management team, you and other Company professionals, Phoenix will assist the Company in the following areas.

### Tasks **Included** in Scope

It is anticipated that the role of Phoenix **shall include** the following:

1.    Review presentations developed by the Company that are intended to be delivered at meetings with representatives of its secured and unsecured creditors;

2.    assist in the preparation of, and thereafter review certain documents, Schedules and Statements of Financial Affairs, financial reports and MOR's, prior to their submittal, including analyses required by the U.S. Bankruptcy Court, the Office of the U.S. Trustee, and the Company's secured and unsecured creditors;

3.    Advise the Company with regard to strategy relating to negotiations with the Company's creditors, customers, and other parties in interest;

4.    *Assist* the Company with *developing* its Plan of Reorganization (the "Plan") and the disclosure statements accompanying the Plan. In this capacity, Phoenix will coordinate with the Company in developing or refining its business plans, financial forecasts, and financing requirements in order to demonstrate the feasibility, or lack thereof that will be necessary as part of the Plan approval process. As necessary, Phoenix will also assist the Company with meeting with its creditors so that the Plan can be openly discussed in a manner that can suit the needs of all of the Company's constituents.

5.    Assist the Company with other financial or operational needs as they may arise at any point during the Company's Chapter 11 proceedings.

6.    Provide testimony during the Chapter 11 proceeding.

### Staffing
Michael Jacoby will serve as the Phoenix principal in charge of this engagement. Dennis Bobker and Joe Nappi will also provide services to the Company pursuant to this Agreement. Additional Phoenix personnel may be utilized to assist with this project.

### Fees for Services Rendered
Phoenix shall charge the following hourly fees for providing financial advisory and crises management services.

| | |
|---|---|
| Managing Directors | $365/hr. - $425/hr. |
| Directors | $275/hr. - $345/hr. |
| Vice Presidents | $195/hr. - $265/hr. |
| Analysts/Associates | $150/hr. - $195/hr. |

Mr. Jacoby's hourly rate for this project will be $385. Mr. Bobker's hourly rate for this project will be $265. Mr. Nappi's hourly rate for this project will be $175. We have agreed not to bill the non-working portion of travel time.

In addition, in the event that the Company consummates a Plan of Reorganization that involves a restructuring of the Debt and Equity Interests pursuant to a Final Order issued by the Bankruptcy Court, Phoenix will be entitled to seek a "Success Fee" equal to 1.0% of the Capitalization of the

reorganized company, or in the case of a merger or other business combination, 1.0% of the value attributed to the Company. For purposes of calculating the Success Fee, Capitalization shall be defined as the aggregate amount of debt and equity on the reorganized entities books at emergence. Phoenix acknowledges that its entitlement to the "Success Fee" is subject to the prior approval of the Bankruptcy Court, consistent with and pursuant to Section 503(b)(1)(A) of the Bankruptcy Code, after notice and hearing, and that Phoenix bears the burden of establishing entitlement thereto as the result of its efforts in aiding in the restructuring.

Further, Phoenix acknowledges that the failure of Omega Bank, S&T Bank, the Official Committee of Unsecured Creditors and any other party in interest to object to the retention as well as the withdrawal of pending objections to the retention shall not be construed as their agreement to the payment of any Success Fee, and that all parties in interest, including the Debtor, Omega Bank, S&T Bank, the Official Committee of Unsecured Creditors and any other party in interest to object to any success fee sought.

The Company shall reimburse Phoenix for all reasonable expenses, excluding legal fees incurred by Phoenix in performing its duties hereunder. All out-of-pocket operating and travel costs will be billed at cost, and detailed invoices will be issued weekly to help you monitor the cost of the engagement. Invoices for Phoenix's services will be submitted to the Court for approval for payment in accordance with all appropriate court rules and orders.

The Company agrees that all billed and accrued fees and costs before the Chapter 11 proceeding is filed, including fees and costs related to the preparation of the Company's Chapter 11 filing, are entitled to be paid via a debiting of the previously paid retainer.

The Company has previously provided Phoenix with a retainer in the amount of Seventy Thousand dollars ($70,000.00). On 3/13/06, Phoenix issued invoice number 9256 in the amount of $42,061.85 for services rendered from 3/06/06 through and including 3/12/06.
In addition to the payment described in the preceding paragraph, a portion of the $70,000 advance payment will be used to pay for services rendered by Phoenix (and fees incurred by Phoenix) from 3/13/06 up until the bankruptcy petition date.

The advance payment of $70,000 has been deposited into our firm's general operating account, and will not be held in escrow. Therefore, our firm considers all advance payments to be our firm's property, and will use them accordingly. However, you have the right to discontinue use of our firm's services at any time (subject, following the filing of the bankruptcy petitions, to court approval). If our firm's services are discontinued at any time before the advance payments have been exhausted, any amount of the advance payments not earned by our firm will be promptly refunded to the Companies or, if applicable, as otherwise ordered by the Bankruptcy Court. The unused amount of the Companies' advance payment retainers will be available as a credit to apply toward allowed fees and costs in the bankruptcy cases.

Phoenix is willing to enter into this Agreement, conditioned on the agreement of Omega Bank, which agreement must be in form and substance acceptable to Phoenix in our sole discretion, to "carve out" from its collateral, as well as priming any administrative claims it may have, an amount (which includes the amount of the retainer after accounting for payment of all prepetition invoices), of up to $100,000.00 (the "Carve-Out Amount"). The Carve-Out Amount

shall be utilized, if necessary, to fund all fees and costs allowed by the Bankruptcy Court to Phoenix, but not paid during the course of the cases.

## Independent Contractor

The parties intend that an independent contractor relationship will be created by this agreement. As an independent contractor, Phoenix will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, as an independent contractor, Phoenix will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension, or social security benefits, workers' compensation, disability, unemployment insurance benefits, or any other employee benefits. Phoenix will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business. While rendering services to the Company, Phoenix employees assigned to this engagement may continue to work with other personnel at Phoenix in connection with unrelated matters, which will not unduly interfere with services pursuant to this engagement.

Phoenix is not to be considered an employee or agent of the Company and the employees of Phoenix are not entitled to any of the benefits that the Company provides for the Company's employees. The Company also agrees not to solicit, recruit or hire any employees or agents of Phoenix for a period of two years subsequent to the completion and/or termination of this Agreement.

## Work Performed

Work performed by Phoenix for the Company will be performed on a "level-of-effort" basis, that is, the depth of our analyses and extent of our authentication of the information on which our advice to the Company and you will be predicated, may be limited in some respects due to the extent and sufficiency of available information, time constraints dictated by the circumstances of our engagement, and other factors. Moreover, we do not contemplate examining any such information in accordance with generally accepted auditing or attestation standards. Rather, it is understood that, in general, we are to rely upon information disclosed or supplied to us by employees and representatives of the Company without audit or other detailed verification of its accuracy and validity. The Company acknowledges that it is hiring Phoenix purely to assist the Company in the restructuring of its business and/or the wind-down of operations, sale of assets, and Chapter 11 bankruptcy filing. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting or consulting engagement that is subject to the rules of the AICPA, the SSCS, or other such state and national professional bodies.

## Reports

Phoenix will submit oral and/or written reports at the request of you, summarizing our evaluations and analyses based on our work pursuant to this Agreement. Our reports will encompass only matters that come to our attention in the course of our work and are significant in relation to the objective of our engagement. However, because of the time and scope limitations implicit in our engagement and the related limitations on the depth of our analyses and the extent of our verification of information, we may not discover all such matters or perceive their significance. Accordingly, we will be unable to and will not provide assurances in our reports concerning the integrity of the information used in our analyses and on which our findings and advice to the Company and you may be based. In addition, we have no obligation to and will not update our reports or extend our activities beyond the scope set forth herein unless you on behalf of the Company request and we agree to do so.

## Disclosures

Phoenix is a Delaware subchapter S Corporation that provides financial advisory, crises management and restructuring services. Phoenix has represented, and will in the future represent, many different clients with various business interests in numerous industries. These clients are often referred to or are likely to be referred to Phoenix by intermediaries such as lawyers, investment bankers, lenders and accountants ("Referral Sources"). In undertaking the engagement on behalf of the Company, Phoenix's objective is to provide services for the Company to the best of its ability, but without precluding Phoenix from representation of other clients or from accepting referrals from or making referrals to Referral Sources. Since Phoenix wants the Company to be comfortable with the retention of Phoenix in light of other client and Referral Sources relationships, Phoenix makes the following disclosures, based on the information provided by the Company, of parties with an interest in the engagement:

(i) Reed Smith is or likely will be a referral source to Phoenix and Phoenix has or will refer business to Reed Smith.

Phoenix agrees to update the disclosure information from time to time if and when additional parties with an interest in or a relationship with the Company come to the attention of Phoenix. As a specific condition to Phoenix's undertaking this engagement, the Company acknowledges the potential conflicts of interest inherent in the any disclosures and waives any breach of fiduciary duty or similar claim related to such disclosures.

## Legal Proceedings

If after the termination of the engagement Phoenix is requested and agrees or is required to participate in any manner in legal or administrative proceedings regarding the Company, compensation shall be paid to Phoenix for its time at the then current hourly rates, subject to proper application to the Bankruptcy Court pursuant to Section 503(b)(1)(A) of the Bankruptcy Code. For individuals no longer employed by Phoenix at the time of such participation, payment shall be made to such individuals directly or to their employers, as applicable.

## Confidentiality

During the term of the engagement and for a period of twelve months thereafter, Phoenix shall keep secret and retain in strictest confidence, any and all confidential information relating to the Company or which Phoenix shall obtain knowledge of by reason of the engagement, including, without limitation, trade secrets, customer lists, financial plans or projections, pricing policies, marketing plans or strategies, business acquisition or divestiture plans, new personnel acquisition plan or strategies, technical processes and other research projects. Phoenix shall not, except in connection with the performance of its duties hereunder, disclose any such information to anyone outside the Company, other than to Phoenix's legal counsel, as required by applicable law (provided prior written notice thereof is given by Phoenix to the Company) or with the Company's prior written consent, which shall not be unreasonably withheld or delayed, nor shall Phoenix purchase or sell any securities of the Company at any time. The obligations of Phoenix in this paragraph shall not apply to information which is (i) known generally to the public; (ii) known to Phoenix prior to the date of this Agreement; (iii) lawfully disclosed to Phoenix by a third party; (iv) generally known in the industry in which the Company is engaged; or (v) required by law to be disclosed by Phoenix, in which event Phoenix shall provide the Company with prompt notice thereof.

The Company shall not, except as required in the conduct of its business, disclose any work product to any third party other than the Company's lenders, attorneys and advisors or as otherwise required by law, without the prior written consent of Phoenix, which consent shall not be unreasonably withheld or delayed.

## Communications

Phoenix and its affiliates have extensive experience providing companies with financial advisory, restructuring and consulting services. Over the years, Phoenix and its affiliates have represented many different clients with various business interests in numerous industries and have developed working relationships with intermediaries, such as lawyers, investment bankers, lenders and accountants, who often provide referrals to them. Phoenix may be able to call upon these successful working relationships to better assist the Company in its efforts. In undertaking the engagement on behalf of the Company, Phoenix's objective is to provide services for the Company to the best of its ability. Part of Phoenix's role during this engagement will be to maintain the credibility of the Company with your various creditor constituencies through ongoing communications. As such, we will periodically communicate directly with your creditors, as necessary and share information with them concerning the purposes of the Company efforts. The Company acknowledges that a good relationship with its creditors is critical in promoting a successful reorganization and agrees that Phoenix shall be entitled to respond to reasonable creditor requests for information.

## Use of Name

The Company agrees that Phoenix and/or its affiliates shall have the right to use the Company's name and logo in a description of the services provided by Phoenix under the Agreement.

## Applicable Law

The Agreement shall be governed in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflicts of laws, as well as where applicable, Title 11 of the U.S. Code.

## Termination

The Company and/or Phoenix may terminate this Agreement, with or without cause immediately upon written notice subject to required Bankruptcy Court approvals, as applicable, to termination of or withdrawal of representation by professionals. In the event of such termination, the Company shall pay to Phoenix all amounts accrued or due under this Agreement through the date of termination that have not been previously paid, subject to Court approval.

## Entire Agreement, Waiver, Modifications and Notices

This Agreement, including any Exhibits, constitutes the final and complete expression of the parties with respect to its subject matter and supersedes and replaces any other written or oral agreement or understanding between the Company and Phoenix. This Agreement may be amended, modified, supplemented or waived only by a written instrument signed by both parties. No waiver of a breach hereof shall be deemed to constitute a waiver of a future breach, whether of a similar or a dissimilar nature. All notices, demands or other communications which are required or are permitted to be given in this Agreement shall be in writing and shall be deemed to have been sufficiently given (i) upon personal delivery, (ii) the third business day following due deposit in the United States mail, postage prepaid, and sent certified mail, return receipt requested, correctly addressed or (iii) when receipt is acknowledged if sent via facsimile transmission. Notices to you shall be sent to the address set forth on page one of this Agreement. Notices to Phoenix shall be sent to the address set forth below:

> Phoenix Management Services, Inc.
> Attention: Michael E. Jacoby
> 110 Chadds Ford Commons
> Chadds Ford, PA 19317
> Phone (610) 358-4700
> Fax (610) 358-9377

Either party may give written notice of a change of address by certified mail, return receipt requested, and after notice of such change has been received, any notice shall be given to such party in the manner above described at such new address.

## Bankruptcy

In the event the Company seeks protection under the U.S. Bankruptcy Code, the Company agrees that it will promptly apply to the Bankruptcy Court to obtain approval of our retention and retainer effective as of the date of filing in accordance with all applicable rules and statutes.

## Expiration of Offer

If this Agreement is not executed within seven days from its issue date, Phoenix reserves the right to amend or revoke the terms after such date.

If you agree to the terms and conditions set forth above, please indicate your acceptance and approval by signing this letter in the appropriate spaces and on the duplicate copy attached. Please return one fully executed original to the undersigned for our files.

Phoenix looks forward to serving you in this important matter.

Yours very truly,

Phoenix Management Services, Inc.

 /s/ Michael E. Jacoby

Michael E. Jacoby
Managing Director


W.S. Lee & Sons, Inc., and Lee Systems Solutions, LLC,
hereby accept and agree to the terms set forth in the foregoing letter.

## W.S. Lee & Sons, Inc.


By:  /s/ Robert S. Donaldson, CEO


## Lee Systems Solutions, LLC


By: /s/ Robert S. Donaldson, CEO


P.S. As of April 20, 2006- Phoenix acknowledges its familiarity with the language regarding a
"Carve Out" by Omega Bank of the sum of $100,000 for the services of the Debtor's financial
advisor as are contained in the Interim Order(s) regarding the use of Cash Collateral and
Authorizing Debtor-In-Possession Financing entered March 20, 2006, as well as the Final Orders
relating thereto entered April 20, 2006, and agrees that the provisions thereof and in the related
agreements are sufficient to satisfy the conditions related to the "Carve Out" being acceptable to
Phoenix set forth supra.